FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

OCT 12 PM 4: 43

CLERK _____
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

MICHAEL D. WALLACE,    )
    )
    Plaintiff,    )
    )
v.    )    Case No. CV405-140
    )
OFFICER J.A. WILLIAMS, JR.,    )
WARDEN DANNIE THOMPSON, and )
DEPUTY WARDEN JAMES DEAL,    )
    )
    Defendants.    )

## REPORT AND RECOMMENDATION

Before the Court is defendants' motion for summary judgment. Doc. 38. Plaintiff has filed a response opposing defendants' motion. Doc. 43. For the following reasons, defendants' motion should be GRANTED in part and DENIED in part.

## I.    Background

Plaintiff was incarcerated at the Coastal State Prison (CSP) in Garden City, Georgia on July 6, 2005, when he was involved in an altercation with Correctional Officer J.A. Williams, Jr.. Doc. 1. Plaintiff contends that defendant Williams repeatedly hit him in the head with handcuffs and

choked him without provocation after plaintiff requested his mail.  Id.
Plaintiff asserts that defendants Thompson and Deal, the warden and
deputy warden at the prison, "knew or should have known of widespread
abuse and/or unprovoked attacks by officers against inmates by way of
grievances and other forms of complaints."  Doc. 17.  Plaintiff also asserts
that defendants Thompson and Deal "have failed to act and/or adopted such
abusive, unprovoked attacks against inmates by officers as policy."  Id.
Plaintiff claims that defendants Thompson and Deal are "responsible and
liable" for his injuries and that by not firing defendant Williams, they have
supported Williams' "abusive and violent nature."  Id.

## II.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to
enter summary judgment where the record, taken as a whole, establishes
"that there is no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."  "An issue of fact is
'material' if it might affect the outcome of the case under the governing
laws. . . . It is 'genuine' if the record taken as a whole could lead a rational
trier of fact to find for the nonmoving party."  Baker v. Sears, Roebuck &

<u>Co.</u>, 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." <u>Tidmore v. BP Oil Co./Gulf Products Div.</u>, 932 F.2d 1384, 1387 (11th Cir.), <u>cert. denied</u>, 502 U.S. 925 (1991)(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the

3

non-moving party's position will not fulfill its burden.  <u>Walker v. Darby</u>, 911

F.2d 1573, 1577 (11th Cir. 1990).  The Court must consider the entire

record in the case, not just those portions of the record which have been

singled out for attention by the parties.  <u>Baker</u>, 903 F.2d at 1515.

## III.  Analysis

### A.    Exhaustion

As an initial matter, defendants contend that plaintiff failed to

exhaust his administrative remedies prior to filing his complaint, as

required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

Doc. 38.  Plaintiff concedes that he has not filed a grievance regarding the

allegations of his complaint, but he asserts that prison officials have denied

him his right to file a grievance by refusing to furnish him with the

appropriate grievance form.  Docs. 1, 45.

The Georgia Department of Corrections grievance procedure in effect

at the time of the events giving rise to the instant action required an inmate

to file an informal grievance concerning his complaint before filing a formal

grievance.  SOPIIB05-0001 § VI(B) (eff. date June 1, 2004).  Informal

grievance forms were provided to inmates in isolation and segregation areas

"upon request by staff assigned to those areas." Id. An inmate had to complete this form within ten calendar days of the incident giving rise to the grievance. Id. After completing the informal grievance procedure, an inmate could request a formal grievance form from his counselor. SOPIIB05-0001 § VI(C).

Following the altercation with defendant Williams, plaintiff was placed in administrative segregation at CSP, where he remained until November 22, 2005. Doc. 40, Ex. E. Plaintiff, through his sworn affidavit, asserts that he made three separate requests for the required grievance form following the altercation. Doc. 45. Plaintiff alleges that he first requested a grievance form from Officer Johnson on the day of the incident. Id. After Officer Johnson told plaintiff that the prison was out of grievances, he made a second request to Officer Hunter the day following the altercation. Id. Officer Hunter allegedly told plaintiff that there were no forms in the prison controlroom and that plaintiff could acquire a form from a counselor. Id. Plaintiff asked Counselor Cook for a grievance on July 9, 2005, but Cook allegedly failed to return a form to plaintiff. Id.

5

Although the PLRA requires "complete exhaustion," <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2387 (2006), exhaustion is not required where a prisoner is precluded from filing a grievance, for then there is no "available" administrative remedy within the meaning of the statute. <u>Booth v. Churner</u>, 532 U.S. 731 (2001). Defendants submitted the affidavit of Patricia Taber, a counselor to administrative segregation inmates at CSP, in support of their contention that plaintiff failed to exhaust his administrative remedies. Doc. 40, Ex. E. Taber reviewed plaintiff's grievance history and found that plaintiff had failed to submit a grievance in connection with the July 6, 2005 incident. <u>Id.</u> Taber also noted that plaintiff failed to request a grievance form from her in the five months in which he was housed in administrative segregation, despite the fact that she saw him no less than three days a week during that time. <u>Id.</u>

While a prisoner must make a diligent effort to exhaust his administrative remedies, his required persistence is constrained by the bounds of reasonableness. Plaintiff contends that he requested grievance forms on three separate occasions and that he was denied a form each time. Doc. 45. The Standard Operating Procedures (SOP) which govern the

6

grievance process provide that informal grievance forms "are to be available upon request to all inmates, including those inmates in isolation or administrative segregation." SOP IIB05-0001, Attachment 9. The SOP further provide that "[c]ounselors will carry informal grievance forms on their rounds though isolation and administrative segregation areas" and that "[c]ounselors may give informal grievance forms to any inmate, even those not on their caseload." Id. Moreover, the SOP do not provide that an inmate may only request an informal grievance form from his counselor, but instead provide that "[i]nmates in isolation and segregation areas will be provided Informal Grievance Forms upon request by *staff* assigned to those areas." SOP IIB05-0001 § VI(B) (emphasis added). Defendants do not contend that it was inappropriate for plaintiff to request the informal grievance form from the two guards or Counselor Cook, nor do they contend that plaintiff was required to request a form from Ms. Taber. The SOP do not require plaintiff to request a form from a particular individual, as long as he made an effort to exhaust his remedies by requesting a form from a prison staff member assigned to the administrative segregation area.[1]

---

[1]Plaintiff states that he spoke with Ms. Taber around the end of July, the first time he saw her after the altercation. Doc. 45. Plaintiff asserts that he asked Ms. Taber

Despite his three requests, plaintiff was unable to secure a grievance form. Because plaintiff's repeated and appropriate attempts to secure a grievance form were unavailing, no administrative remedies were "available" to him within the meaning of the statute.[2] The Court, therefore, will now address the merits of defendants' motion.

## B.    Excessive Force Claim

In considering a claim that a prison guard used excessive force against a prisoner, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Although the use of excessive physical force may violate the Eighth Amendment prohibition against cruel and unusual punishment even when the inmate does not suffer "serious injury," it is nevertheless permissible to view the extent of the injury suffered as suggesting whether the force

--------------------------------

for a grievance form at that time in order to file an out-of-time grievance, but Ms. Taber refused to provide him with a form. Id. Ms. Taber declares that she never denied plaintiff a grievance form. Doc. 40, Ex. E.

[2]The Court notes that the question of whether plaintiff has properly exhausted his administrative remedies is a close call based on the information before it. For the instant motion, the Court credits plaintiff's testimony that he attempted to comply with the proper grievance procedure but was unable to do so based on factors beyond his control.

used was appropriate under the circumstances.  Id. at 7, 9-10 (de minimis uses of force are excluded from constitutional recognition).

Plaintiff claims that Officer Williams hit him in the head with handcuffs and repeatedly beat him without provocation after plaintiff requested his mail. Doc. 1. According to plaintiff, Officer Williams refused to give his mail to him because he had already conducted mail call. Doc. 43. Plaintiff believed that Officer Williams was upset with him and was attempting to take his mail, so plaintiff asked to speak with a supervisor. Id. Officer Hayes responded to plaintiff's request, informing him that he would call the supervisor when he finished eating. Id. As plaintiff began to leave the area, he alleges that Officer Williams ordered him to come back and place his hands on the wall. Id. Plaintiff then asked Officer Williams to call the supervisor, but he refused and told plaintiff that if he did not be quiet, he would "bust [plaintiff's] head to the white meat." Id. Officer Williams then took out his handcuffs, placed them over his head, and hit plaintiff in the back of the head. Id. Plaintiff alleges that the blow caused him to fall to the floor, where Officer Williams continued to beat him with the handcuffs and prevented him from escaping. Id. Plaintiff contends that

Williams then wrapped his arms around plaintiff's neck and began to choke him. Id. Plaintiff then bit Williams in an effort to get him to stop beating and choking him. Id. Plaintiff alleges that Lt. Rivera, the supervisor on duty, came upon the scene and instructed Williams to release and stop hitting plaintiff. Id. Plaintiff alleges that he suffered severe injuries as a result of this attack and still has scaring on his head. Id.

Officer Williams disagrees with plaintiff's recitation of the facts. Doc. 39. Williams contends that at the time of the incident, he was running pill call for the F Building, C Range at CSP when plaintiff came to the top of the stairs of the adjoining B Range and requested his mail. Doc. 40, Ex. C (Williams Aff.). Williams contends that he informed plaintiff that he was busy with pill call but would give plaintiff his mail later. Id. Williams contends that plaintiff became enraged, initially stepping down off the stairs, but returning a few minutes thereafter shouting profanities, kicking the range door, and asking to see a supervisor. Id. Williams states that he then cleared the lobby of all inmates, secured the C Range door, and entered the B range. Id. After securing the B range door, Williams states that he instructed plaintiff to turn around and face the wall to be

handcuffed, and that plaintiff refused to obey this command and instead approached him in an aggressive manner. Id. Williams states that he applied force to plaintiff in an effort to place plaintiff on the ground so he could handcuff him, but plaintiff grabbed his left wrist and began biting his wrist and forearm. Id. Williams maintains that he used "only the minimum amount of force necessary to get [plaintiff] to stop biting his left wrist and forearm." Id.

Both plaintiff and Officer Williams have submitted sworn statements which set forth conflicting assertions of fact. Doc. 40, Ex. C (Williams Aff.); Doc. 45, Ex. A (Wallace Aff.). Defendants submitted the incident report relating to the July 6, 2005 altercation with their motion for summary judgment. Doc. 40, Ex. G. The report includes various witness statements from jail staff members as well as inmates in the building who observed the incident. Id. While the statements from the prison staff members support Officer Williams' contention that plaintiff was causing a disturbance that required some amount of force to bring under control, statements from other inmates corroborate plaintiff's allegations that he was attacked without provocation or cause. Id. Thus, a genuine issue of material fact

11

still exists regarding plaintiff's excessive force claim against defendant Williams, and summary judgment in favor of this defendant is not appropriate. Defendants' motion for summary judgment as to defendant Williams should be DENIED.

### C.   Supervisor Liability

Plaintiff also asserts claims against Dannie Thompson, the warden at CSP at the time of the incident, and James Deal, the deputy warden for security at CSP at that time. Plaintiff claims that both defendants "knew or should have known of widespread abuse and/or unprovoked attacks by officers against inmates by way of grievances and other forms of complaints by inmates and staff alike." Doc. 17. Plaintiff alleges that both defendants "failed to act and/or have adopted such abusive, unprovoked attacks against inmates by officers as policy." Id.

Claims brought pursuant to § 1983 cannot be based upon theories of respondeat superior or vicarious liability. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978).  Rather, plaintiff must demonstrate either that an individual defendant directly participated in the alleged constitutional deprivation or

that there is some other causal connection between the official's acts or omissions and the alleged constitutional deprivation.  Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam).  Such a causal connection may be established by showing that a supervisory official implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the violation occurred.  Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985).  A supervisory official may also be subject to § 1983 liability when a history of widespread abuse puts the official on notice of the need to take corrective action and he fails to do so.  Brown, 906 F.2d at 671; Williams v. Cash, 836 F.2d 1318, 1320 (11th Cir. 1988).  A causal connection between the supervisory official's acts or omissions and the plaintiff's injury is essential to establish liability.

Plaintiff alleges that defendants Thompson or Deal "knew or should have known of widespread abuse and/or unprovoked attacks by officers against inmates" at CSP. Doc. 17. Both defendants submitted affidavits in which they state that were never "aware that the security staff routinely

and as a matter of pattern and practice staff [sic] beat, tortured, or used excessive force upon C.S.P. inmates." Doc. 40, Exs. A, B.  Thompson and Deal also state that if they had been aware of any such incidents, they "would have taken immediate action to ensure that any beatings, torture and/or uses of excessive force immediately ceased."  Id.  Plaintiff has failed to refute these statements in his response to defendants' motion for summary judgment.

Plaintiff stated in his deposition that he sued defendant Thompson "[b]ecause he was responsible."  Doc. 40, Ex. O.  Plaintiff also stated that he wrote a letter to defendant Thompson concerning the incident but that Thompson would not discuss the incident with him or otherwise respond to his complaints.  Id.  Defendant Thompson acknowledges that plaintiff gave him a letter concerning the July 6, 2005 incident.  Doc. 40, Ex. B.  After receiving the letter, Thompson advised plaintiff that he would discuss the matter with him after the Internal Affairs Office completed its investigation.[3]  Id.  The investigation was not completed before plaintiff was

------

[3]The incident report concerning the July 6, 2005 altercation was referred to the Internal Affairs Office for an investigation, in accordance with the policy of the Georgia Department of Corrections.  Doc. 40, Ex. B.

transferred from CSP on November 22, 2005, and therefore Thompson never discussed the incident with plaintiff. Id. Thus, Warden Thompson did not ignore plaintiff's complaints but rather was aware of the situation and was awaiting the completion of the Internal Affairs investigation prior to taking any action on an incident that had already occurred. In his response to defendants' motion for summary judgment, plaintiff has failed to establish a direct causal connection between Warden Thompson and his alleged constitutional deprivation or that Warden Thompson sanctioned an official or unofficial policy of inmate abuse at CSP. Defendants' motion for summary judgment as to defendant Thompson should be GRANTED.

Plaintiff stated that he sued defendant Deal because Deal was "over security" and should not have allowed Officer Williams to be in his unit because Officer Williams was not "mental health certified." Doc. 40, Ex. O. Plaintiff concedes that this is the sole basis for his claims against defendant Deal. Id. Plaintiff offers no evidence for his contention that Officer Williams is not certified to work with mental health inmates and fails to allege any actions taken by defendant Deal that violated his constitutional rights. Thus, plaintiff has failed to demonstrate a causal connection

between Deal's actions and his alleged constitutional violations.  As noted above, plaintiff has also failed to establish a pattern or practice of excessive use of force against inmates at CSP that would put prison supervisors on notice of such problems at the prison.  Absent such a showing, plaintiff has failed to meet his burden to defeat defendants' motion for summary judgment with respect to defendant Deal.  Accordingly, defendants' motion for summary judgment as to defendant Deal should be GRANTED.

## IV. Conclusion

Based on the foregoing, defendants' motion for summary judgment should be GRANTED as to defendants Thompson and Deal since plaintiff has failed to set forth any facts or evidence that would establish defendants' liability for the constitutional violations he alleges.  Defendants' motion for summary judgment should be DENIED as to defendant Williams.

SO REPORTED AND RECOMMENDED this _12TH_ day of October, 2006.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

16